# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Atlas Air, Inc.                                )
                                               )
      Plaintiff,                          )
                                               )
    v.                                       )
                                               )  Civil Case No.
Ocean Airlines S.p.A.                          )
                                               )
      Defendant                           )

**JUDGE ROBINSON**

**07 CV 10478**

## COMPLAINT

Atlas Air, Inc. (hereinafter referred to as "Atlas") by and through its undersigned

counsel hereby brings this Complaint against the Defendant Ocean Airlines S.p.A.

(hereinafter referred to as "Defendant"), and alleges as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Atlas is a corporation organized and existing under the laws of the State of

Delaware, having a principal place of business at 2000 Westchester Avenue, Purchase,

New York, 10577. Atlas is registered to do business in the State of New York and is

doing business in this State and District.

2.      Defendant is a company organized under the laws of Italy.

3.      Upon information and belief, Defendant has been and is regularly doing

business in the State of New York and within this District.

4.      This is an action for breach of contract between a citizen of the United

States and a citizen of a foreign country.

5.     This Court has jurisdiction over the subject matter of this action on at least the following ground: 28 U.S.C. § 1332(2), this being a civil action arising between Atlas, a citizen of the State of New York, and Defendant, a citizen or subject of a foreign state and the amount in controversy is greater than $75,000 exclusive of interest and costs.

6.     This Court has personal jurisdiction over Defendant because, *inter alia*, Defendant consented to jurisdiction in the State of New York, in a written agreement, and otherwise has committed acts in this State and in this District that are the subjects of and/or related to the claims set forth herein.

7.     Venue is properly laid in this Court under the provisions of 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

8.     Atlas and Defendant entered into an Aircraft Charter Agreement on or about October 6, 2006 which was amended by an Amendment No. 1 dated as of December 4, 2006. A copy of the Aircraft Charter Agreement and Amendment No. 1 are annexed hereto as Exhibit 1 and are hereinafter collectively referred to as the "Contract."

9.     Defendant breached the Contract by failing to make payments when due as required by the Contract.

10.     Atlas fully performed its obligations under the Contract and sent notice to Defendant on or about April 5, 2007 when Defendant failed to make the payments required by the Contract.

11.    Despite due notice and demand, Defendant failed to make any payments after April 5, 2007 notwithstanding numerous promises from Defendant's representatives that it would remedy Defendant's breach and/or make payments to Atlas.

12.    On or about October 22, 2007, as a result of Defendant's continued breach and failure to pay amounts owing to Atlas under the Contract, Atlas and Defendant entered into a Repayment Agreement. A true and correct copy of the October 22, 2007 Repayment Agreement is annexed hereto as Exhibit 2 and is hereinafter referred to as the "Repayment Agreement."

13.    The Repayment Agreement, *inter alia*, specified Defendant's acknowledgement that Defendant owed Atlas six hundred eighty eight thousand, seven hundred seventy three dollars and forty one cents ($688,773.41) plus interest and other amounts due under the Contract and established a repayment schedule.

14.    Defendant conceded in the Repayment Agreement the amounts owed to Atlas were "without defense, setoff or counterclaim."

15.    The Repayment Agreement provided for a temporary forbearance against Defendant until December 24, 2007, unless Defendant defaulted its obligations as specified in paragraph 4 of the Repayment Agreement.

16.    In the event of Defendant's default under the Repayment Agreement, the December 24, 2007 forbearance automatically and immediately terminated.

17.    Despite multiple promises to pay the amounts due, Defendant has breached its obligations under the Repayment Agreement thus terminating the December 24, 2007 forbearance period.

## FIRST COUNT (BREACH OF CONTRACT)

18.     Atlas repeats and realleges the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

19.     By failing to pay amounts when due, Defendant breached the Contract and Atlas has been damaged.

20.     Atlas claims damages for Defendant's breach of the Contract in an amount to be proven at trial plus attorney's fees and costs of suit.

## SECOND COUNT (BREACH OF REPAYMENT AGREEMENT)

21.     Atlas repeats and realleges the allegations contained in paragraphs 1 through 17 as if fully set forth herein.

22.     By failing to make payments to Atlas when required under the Repayment Agreement, Defendant breached the Repayment Agreement.

23.     Paragraph 13 of the Repayment Agreement specifically provides for an award of attorney's fees, costs and expenses from the losing party.

24.     Atlas has been damaged by Defendant's breach of the Repayment Agreement and claims damages in an amount to be proven at trial plus attorney's fees and costs and expenses.

## PRAYER FOR RELIEF

25.     WHEREFORE, Plaintiff respectfully requests that the Court find in their favor and against Defendants and the Court enter a judgment or order granting Plaintiff the following relief:

a.   That Defendant account for and pay to Plaintiff damages caused by

Defendant's breaches of contract complained of herein;

b.   That Plaintiff be granted pre-judgment and post-judgment interest at

the maximum rate allowable by law on the damages caused to Plaintiff

by reason of Defendant's breaches of contract complained of herein;

c.   That Plaintiff be awarded costs as provided by the Repayment

Agreement; and

d.   That Plaintiff be granted such other and further relief, both legal and

equitable, as the Court may deem just and proper under the

circumstances.

Respectfully submitted this 20th day of November, 2007.

Brian T. Foley (Bar No. BF 1159)
McGovern & Associates, P.C.
14 East 60th Street, Suite 606
New York, NY 10022
(212) 688-9840

ATTORNEY FOR PLAINTIFF




5627

## AIRCRAFT CHARTER AGREEMENT No. VC-2006-10-06-5Y

THIS AIRCRAFT CHARTER AGREEMENT No. VC-2006-10-06-5Y (the/this *Agreement*), made and entered into as of this 6th day of October 2006 (the *Effective Date*), by and between ATLAS AIR, INC., a Delaware Corporation, having its principal operating office at 2000 Westchester Avenue, Purchase New York 10577, USA; and Ocean Airlines, S.p.A. , a company organized under the laws of Italy, having its principal place of business at Brescia Airport, Brescia Italy (*CUSTOMER*) (each, a *Party*; collectively, the *Parties*).

### WITNESSETH:

WHEREAS, ATLAS offers services which include the chartering of its aircraft to customers under an Aircraft, Crew, Maintenance, and Insurance Agreement ("ACMI"); and

WHEREAS, CUSTOMER desires to avail itself of the aforementioned chartering services offered by ATLAS under such an agreement;

NOW, THEREFORE, in consideration of the foregoing, together with the mutually agreed upon terms and conditions contained herein, the Parties agree as follows:

### ARTICLE 1.
### Main Principles

1.1     ATLAS shall charter to CUSTOMER, and CUSTOMER shall take on charter from ATLAS, one (1) (or more) aircraft (the *Aircraft*), as more fully set forth and identified in Annex A hereto, which, by this reference, is hereby made a part hereof. The Aircraft shall be in full cargo configuration for the charter operation contemplated hereunder as detail in Article 1.2 of Annex A.

1.2     The term of this Agreement shall be as set forth in Annex A (the *Term*).

1.3     Unless otherwise agreed elsewhere in this Agreement or in Annex A, the Flight(s) shall be operated under CUSTOMER'S prefix and flight number(s) (the *Flight[s]*), according to the agreed schedule(s) (the *Schedule[s]*) specified in Annex A. Such Schedule(s) may be amended from time to time in accordance with the terms and conditions set forth herein at Article 7.

1.4     CUSTOMER shall not sub-charter or otherwise obligate ATLAS to operate the Aircraft on behalf of third parties without first receiving prior written consent from ATLAS. Such consent shall be subject to regulatory approval and compliance.

Bill Pellew - Harvey
President
Ocean Airlines

**ARTICLE 2.**

Rates, Charges and Responsibilities

2.1     The agreed price for the services provided by ATLAS pursuant to this Agreement shall be a per-Block-Hour price (the *Block Hour Rate*) as set forth in Annex A.  CUSTOMER shall compensate ATLAS for each month of utilization under the agreement in the amount determined by multiplying the applicable Block Hour Rate by the minimum number of Block Hours guaranteed in Annex A (the *Monthly Minimum Block Hour Guarantee*) or actual Block Hours operated, whichever is greater.  The number of Block Hours operated during the Term of this Agreement shall be based on the Flight(s) in the ACARS record of aircraft movements if ACARS is installed, or recorded in the Captain's Flight Log (which if ACARS is not installed, shall be made available to CUSTOMER) which shall be regarded as final.  For purposes of this Agreement, the term *Block Hours* shall refer to the elapsed time of a Flight, in hours, computed as of the time the Aircraft leaves the chocks for departure until the actual time of arrival in the chocks at the end of the Flight.   CUSTOMER shall operate the Aircraft at a minimum block hour per cycle ratio as set forth in Annex A.

2.2     (a)     ATLAS shall be responsible for provision of the following:

        (i)     Aircraft;

        (ii)    Flight crew, including salaries, pensions, social security and *per diems*;
        (iii)   Crew positioning and de-positioning as per Article 2.5 of Annex A;

        (iv)    Maintenance of the Aircraft, including line maintenance, towing for maintenance purposes, hangar fees, and local maintenance assistance;

        (v)     Aircraft hull and third-party liability insurance as set forth in Article 10; and

        (vi)    Flight planning and dispatch.

    (b)     Any and all costs or charges arising from or related to this Article 2.2 as being payable by ATLAS to third parties shall be paid by ATLAS directly to such third parties, and ATLAS hereby indemnifies CUSTOMER against any and all such related costs or charges.  Only in the event payment of such costs or charges by CUSTOMER to third parties is required, ATLAS shall reimburse CUSTOMER for said payment, plus up to a maximum of five percent (5%) of the aggregate total required to be paid by CUSTOMER as an administrative fee.

2.3     (a)     CUSTOMER shall be responsible for provision of and payment for all other operating expenses, including but not limited to the following:



Harvey

(i)     Aircraft fuel (including all in plane fuel costs such as fuel storage, and transportation, if applicable, and fuel related taxes) and into-plane fueling services (see also Paragraph 8.3 for fuel reconciliation);

(ii)    The costs of en route and air traffic control fees;

(iii)   Landing and/or departure fees, parking fees and airport handling charges;

(iv)    Crew hotel accommodations, airport to hotel and return transfers and crew positioning and de-positioning (as set forth in Article 2.4 and 2.5 of Annex A);

(v)     Local crew ground transportation from Aircraft to airport terminal/customs/immigration;

(vi)    Catering and crew meals as per ATLAS' policy;

(vii)   When CUSTOMER'S rotations are 12 hours or longer such that crew rest becomes necessary, CUSTOMER shall provide provisioning of crew bed rest linens for each crew member, including one sheet, pillow, pillowcase and blanket. Disposable linens or those similar to CUSTOMER'S own crew linens are acceptable.

(viii)  Receiving, collecting and distributing all necessary flight operational paperwork to ATLAS crew members to dispatch the Aircraft;

(ix)    Aircraft handling (including use of ground power during aircraft ground times for cargo loading and unloading), cargo loading or unloading, pushback, lavatory cleaning, water and trash removal, cleaning of flight deck (including linen service) and all cargo compartments, and deicing;

(x)     Preparation and packaging of cargo, buildup and breakdown of pallets, ramp positioning and de-positioning, and all similar cargo handling activities;

(xi)    Warehousing, receipt, delivery, ground transport and documentation of cargo traffic at all stations;

(xii)   All customs fees, penalties, duties and taxes in connection with the traffic and transportation of and handling of cargo and mail;

(xiii)  Pallets, including nets and tension equipment meeting all FAA regulations and standards;

(xiv)   Security costs and expenses as set forth in Sub-Article 4.11(a);

Bill Pellew - Harvey
President
Ocean Airlines

    (xv)   Cargo and mail insurance as set forth in Article 10;

    (xvi)   All taxes as set forth in Article 3 below;

    (xvii)   All costs associated with ground operations training to be provided by ATLAS to CUSTOMER (if such training is requested by CUSTOMER); and,

    (xviii)   All other operating expenses or unusual charges that may arise from time to time as a result of operations contemplated under this Agreement, except such operating expenses for the account of ATLAS as set forth in this Agreement.

(b)   Any and all costs or charges arising from or related to this Article 2.3 as being payable by CUSTOMER to third parties shall be paid by CUSTOMER directly to such third parties, and CUSTOMER hereby indemnifies ATLAS against any and all such related costs, fees, or charges.  In the event payment of any such costs or charges by ATLAS to third parties is required or expedient, as determined by ATLAS in its sole discretion, CUSTOMER indemnifies and agrees to reimburse ATLAS for said costs, fees, or charges, plus up to a maximum of five (5%) of the aggregate total required to be paid by ATLAS as an Administrative Fee.

2.4    Invoicing and payments shall be as set forth in Annex A.

2.5    CUSTOMER shall provide a Security Deposit or Irrevocable Letter of Credit to ATLAS as set forth in Annex A.

### ARTICLE 3.
### Taxes

3.1    Any and all payments due to ATLAS hereunder shall be free from, and CUSTOMER shall pay and hold ATLAS free and harmless from, any and all liability for any and all sales and/or use taxes, and all other taxes, including excise taxes and property taxes (including property taxes assessed based on frequency of operations, time in jurisdiction, time on ground, landings or otherwise), duties, fees, withholdings, VAT, or other assessments or charges, including any and all amount(s) of interest and penalties which may be or become due in connection therewith, imposed or withheld by any governmental authority or agency, or other entity which may be or become due arising out of or resulting from the terms and conditions of this Agreement, payments hereunder, and/or the operation of the Aircraft hereunder, except for United States taxes levied on the income of ATLAS.

Bill Pellew - Harvey
President
Ocean Airlines

ARTICLE 4.
Operational Control

4.1   During the Term of this Agreement, the Aircraft shall be registered under the laws of the United States of America. Notwithstanding any other provision of this Agreement (including those set forth in the attached Annexes), the Aircraft shall at all times be under the exclusive possession, direction, and operational control of ATLAS, whose Captain and dispatcher shall have complete discretion concerning preparation of the Aircraft for Flight(s), the load carried (as well as distribution thereof); whether a Flight shall be undertaken, the route to be flown, whether landings shall be made, and all other matters relating to or arising out of operation of the Aircraft. Such decision(s) of the Captain or dispatcher shall be final and binding upon the Parties.

4.2   At all times during the Term of this Agreement ATLAS shall provide on the Aircraft a valid Certificate of Airworthiness issued by the United States Federal Aviation Administration (*FAA*).

4.3   ATLAS shall maintain and operate the Aircraft in accordance with its FAA-approved ATLAS Operations Manual and Maintenance Program. ATLAS shall endeavor to comply with any additional requirements imposed upon the Aircraft or crew by CUSTOMER, or any governmental authority with which CUSTOMER must comply; *provided* it is not in conflict with FAA or DOT regulations, but any and all additional costs or charges related thereto shall be for CUSTOMER'S account.

4.4   During the Term of this Agreement, the Aircraft shall meet any and all current requirements of United States federal government regulations and orders. ATLAS shall endeavor to comply with any additional requirements imposed upon the Aircraft or crew by applicable foreign governmental agencies or regulations, provided it is not in conflict with FAA or DOT regulations; and provided further that any and all additional costs or charges related thereto shall be for CUSTOMER'S account.

4.5   Any and all flight crew provided by ATLAS under this Agreement shall be properly certified in accordance with the rules and regulations of the FAA and International Civil Aviation Organization (*ICAO*), and shall comply with the laws and requirements of all countries whose rules and regulations may apply under this Agreement which are not in conflict with FAA rules, in accordance with the Flight(s) and/or Schedule(s) set forth in Annex A.

4.6   At all times during the Term of this Agreement, ATLAS shall be responsible for all necessary licenses and permits relating to mechanical operation of the Aircraft.

4.7   At no time during the Term of this Agreement shall any crewmember, officer, agent, employee, or servant to be supplied by ATLAS hereunder be deemed to be a crewmember, officer, agent, employee, or servant of CUSTOMER.

Bill Pellew - Harvey
President
Ocean Airlines

4.8     Nothing contained in this Agreement shall be deemed to obligate ATLAS to operate the Aircraft in violation of the terms or conditions of any insurance policy relating to the Aircraft or its operation in contravention of the time regulations applicable to the crew to be provided hereunder or in violation of any other law, rule or regulation controlling ATLAS'S operations under this Agreement.

4.9     ATLAS may substitute any freighter aircraft listed in the ATLAS Air Operations Specifications for operation of the Flight(s) contemplated hereunder, and ATLAS may use such substitute aircraft for the operation of additional flight(s) within the authorized operating areas listed in the ATLAS Air Operations Specifications; *provided* any such substitute aircraft used shall meet all governmental and regulatory requirements as set forth herein.

4.10    ATLAS shall have the right in its sole discretion to utilize the Aircraft for its own purposes during periods of CUSTOMER'S scheduled or unscheduled downtimes, provided such use does not interfere with CUSTOMER'S scheduled operations under this Agreement.  ATLAS' use of the Aircraft under this section shall be without compensation, credit or offset to CUSTOMER, and shall not reduce CUSTOMER'S Monthly Minimum Block Hour Guarantee hereunder.

4.11    (a)     CUSTOMER shall be required at its expense to adhere to ATLAS' security procedures, including but not limited to security procedures relating to the crew, aircraft and cargo.  ATLAS' security procedures shall be provided to CUSTOMER upon request.  CUSTOMER shall also be responsible for compliance with all Transportation Security Administration ("TSA") regulations and requirements, including but not limited to, screening of cargo destined for or outbound from the United States, screening of service personnel requiring access to the flight deck on flights destined for or departing from the United States, screening of all individuals to be transported on the aircraft including crews on flights destined for or departing from the United States, providing security for the aircraft while on the ground, secure transportation for ATLAS crews when required, and compliance with host country security requirements.  Unless otherwise agreed by ATLAS, CUSTOMER shall also be required to use ATLAS security vendors and contractors for the operations contemplated by this Agreement.  ATLAS shall have the right to inspect and audit CUSTOMER'S security program (including services provided by any approved vendor or contractor) and CUSTOMER agrees to cooperate in any such inspection or audit, provided such inspection or audit shall be conducted at reasonable times and shall not cause a material disruption to CUSTOMER'S operation.

        (b)     Atlas shall not be obliged to operate to any country or airport requested by CUSTOMER if such operations would be contrary to ATLAS Security operating procedures, directives or to regulations or directives of any governmental entity, including but not limited to the United States Departments of State, Transportation and Treasury and the U.S. Federal Aviation Administration.

Bill Pellew - Harvey
President
Ocean Airlines

ATLAS will use its best efforts to keep CUSTOMER advised in advance of country-related and airport-related operating restrictions of the above types. Subject to the other provisions of this Agreement governing use, availability and assignment of aircraft, ATLAS will not unreasonably withhold approval of CUSTOMER requests to operate to countries and airports not covered by the above types of restrictions. ATLAS will provide information with respect to countries, cities and/or airports with restricted overflight, landing and other special requirements on specific request by CUSTOMER.

(c)    CUSTOMER acknowledges that U.S. government agencies, including the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") and the U.S. Commerce Department's Bureau of Export Administration ("BXA"), place limitations on certain types of exports to, and other transactions with, named non-U.S. governments, entities and individuals. CUSTOMER warrants that it will conduct its business pursuant to this Agreement in a manner that does not cause ATLAS to violate any such requirements. In particular, without limiting the applicability of the above, CUSTOMER represents that it will not knowingly cause goods to be exported on ATLAS' services to, cause goods to be imported on ATLAS' services from, or in using ATLAS' services otherwise engage in financial transactions with, persons whom OFAC has identified as specifically designated terrorists. In any event, CUSTOMER agrees to indemnify and hold harmless from all costs, expenses (including reasonable attorneys fees), losses, liabilities, damages, fines, and judgments incurred by ATLAS as a result of any violation of the abovementioned requirements.

## ARTICLE 5.
### Pallets, Load, Documentation and Claims

5.1    CUSTOMER shall, at its own cost and expense, make available and assume responsibility for suitable pallets, nets, and tensioning equipment meeting relevant FAA and Joint Aviation Authorities/European Agency for Safety of the Air (*JAA/EASA* [an umbrella organization formed by the civil authorities of 27 European states]) regulations and standards at all appropriate airports under this Agreement.

CUSTOMER shall, in accordance with International Airline Standards (*IATA*) and/or ICAO standards, properly prepare and pack the cargo to be carried, together with all documentation applicable thereto.

CUSTOMER shall be responsible for the issuance, completion, and delivery of air waybills in accordance with CUSTOMER'S standards, as well as any additional documentation necessary for the carriage of cargo. In the event a special cargo shipment must be accompanied by an attendant, the ticketing and any special documentation related thereto shall be issued by CUSTOMER, at CUSTOMER'S sole cost and expense.

Bill Pellew - Harvey
President
Ocean Airlines

5.4   The carriage of cargo attendants on a Flight hereunder shall comply with the appropriate provisions of the Federal Aviation Regulations (*FAR*).

5.5   Any and all claims that are filed by shippers and/or consignees shall be handled by CUSTOMER.  All other issues of liability under this Agreement shall be handled in accordance with the terms and conditions set forth herein at Article 9.

ARTICLE 6.
Operational Notifications

6.1   At the beginning of each weekly rotation, ATLAS shall place the Aircraft, suitable for loading of pallets, containers and/or bulk cargo, at the disposal of CUSTOMER three (3) hours prior to the scheduled departure time of each Flight, and CUSTOMER shall arrange for the Aircraft to be unloaded within two (2) hours after actual arrival (on blocks) of each Flight.

6.2   ATLAS shall advise CUSTOMER of any expected delays as soon as possible, but not less than twelve (12) hours prior to the scheduled departure time of a Flight.

6.3   CUSTOMER shall advise ATLAS of any expected delays and/or regarding the expected traffic and weight for Flight(s) as soon as possible, but, in any case, shall use its best efforts to provide such notice not less than twenty-four (24) hours prior to the scheduled departure time of a Flight.

6.4   CUSTOMER shall inform ATLAS at least twenty-four (24) hours prior to the scheduled departure time of a Flight of any special cargo expected for such Flight, such as livestock, HazMat, oversized pieces, and/or other special cargo and such notice shall be provided to ATLAS to the departments listed in Annex A.

6.5   CUSTOMER, where applicable, shall be responsible for transmittal of all air automated manifest system "AAMS" data to U.S. Customs and other similar requirements outside of the U.S. as required.

6.6   All messages to ATLAS relating to Flights performed or to be performed under this Agreement shall be sent to the ATLAS at such departments and addresses noted in Annex A.

6.7   In the event of any operational incident or accident, ATLAS shall forthwith inform CUSTOMER'S Operations Control Center at the address(es) noted in Annex A. CUSTOMER shall be allowed to have an observer present during any and all investigation(s) with respect to any such incident or accident, in accordance with the rules and regulations of the appropriate authorities. CUSTOMER shall consult with ATLAS prior to the release of any information to the public or press regarding any such incident or accident.

Bill Pellew - Harvey
President
Ocean Airlines

## ARTICLE 7.
### Changes in Flight(s)

The rates set forth herein assume there will be no material schedule changes which may require rescheduling of crews, stations, departure times, or other changes which may increase ATLAS' costs hereunder. ATLAS reserves the right to hold CUSTOMER responsible for cost increases resulting from schedule changes. To that end, any late changes to the schedules by CUSTOMER within 30 days from the start of each monthly period will be charged at the greater of the actual cost of each required schedule change or on a flat fee basis of USD $5,000 per flight change, whichever is greater.

Should any intermediate landing become necessary due to causes beyond the reasonable control of ATLAS (such as, but not limited to, adverse weather conditions, CUSTOMER payload requirements in excess of normal payloads, and/or *Force Majeure*), any and all additional costs (including added Block Hours and landing fees) incurred with respect thereto shall be borne by CUSTOMER. Additional costs with respect to unscheduled intermediate landings or Aircraft return after takeoff caused by mechanical problems are for the account of ATLAS, in which case CUSTOMER shall pay only the Block Hour and fuel charges as if the Flight had been non-stop and according to its original schedule, and ATLAS shall pay the added landing fees. No payment shall be due from CUSTOMER to ATLAS with respect to Aircraft returning to ramp before takeoff caused by mechanical problems.

7.3     In the event of changes pursuant to this Article, ATLAS shall consult with CUSTOMER. To the maximum extent possible, assuming no impact upon Aircraft safety, ATLAS shall endeavor to conform to commercial decisions suggested by CUSTOMER.

## ARTICLE 8.
### Non-Availability of the Aircraft

8.1     Should it become apparent, regardless of the cause, that the Aircraft will not be available in time to perform a Flight under this Agreement, the Parties hereto shall, in mutual consultation, endeavor to minimize the effects of such non-availability, including reasonable efforts to arrange for substitute aircraft.

8.2     Any substitute aircraft provided by ATLAS for the performance of Flights hereunder shall comply with all pertinent FAA and other regulatory requirements set forth herein at Article 4. ATLAS shall arrange for such substitution to be coordinated with the Flight Standards District Office.

8.3     When a substitute aircraft is used, fuel readings shall be taken at the commencement and termination of such Flight(s), and a reconciliation of any differences shall be made accordingly.

Bill Pellew - Harvey
President
Ocean Airlines

8.4    In the event non-availability of the Aircraft or substitute aircraft due to causes within the control of ATLAS will result in a delay of ten (10) hours or more from the scheduled departure time of a Flight at its original point of departure, CUSTOMER, within two (2) hours of being so notified by ATLAS, may cancel the Flight without incurring any liability or obligation under this Agreement. CUSTOMER shall be entitled to receive a credit equal to the anticipated Block Hours for a Flight so cancelled under this Article 8.4 as a reduction to the Monthly Minimum Block Hour Guarantee. The terms and conditions set forth in this paragraph shall not apply to any Flight that has departed from its origin and for the duration of its roundtrip flight.

### ARTICLE 9.
### Liability and Indemnity

9.1    Except as provided herein at Articles 9.3 through 9.6, ATLAS shall assume liability for, and indemnify and hold CUSTOMER, its officers, employees, agents, and subcontractors free and harmless from, any and all claims, expenses, and legal fees with respect to:

    (a)    Loss of or damage to the Aircraft during the Term of this Agreement, howsoever caused, when the Aircraft is on charter to CUSTOMER hereunder; and

    (b)    Death of or injury to crew members provided by ATLAS, and any individual(s) carried on the aircraft at ATLAS'S discretion, or other personnel of ATLAS or provided for by ATLAS while acting in connection with the performance of this Agreement; and

    (c)    Death of or injury to persons, and loss of or damage to property, other than cargo carried hereunder, caused by the Aircraft during the performance of this Agreement or any part thereof, except as provided herein at Article 9.2,

unless such loss, damage, death, or injury is caused by the willful misconduct or gross negligence of CUSTOMER, its employees, officers, agents, or subcontractors.

9.2    Except as provided herein at Article 9.1 and 9.4, ATLAS, its employees, officers, agents, and subcontractors shall not be liable for, and CUSTOMER shall indemnify, defend and hold ATLAS, its employees, officers, agents, and subcontractors free and harmless from any and all claims, expenses, and legal fees with respect of the following:

    (a)    Loss, delay, non-delivery, damage to, or any other claims relating to cargo, property, or mail carried or to be carried on the Flight(s) under this Agreement; and

    (b)    Death of or injury to personnel of CUSTOMER its, agents, and/or subcontractors while acting in connection with or performance of this Agreement,

Bill Pellew - Harvey
President
Ocean Airlines

unless such loss, damage, death, or injury is caused by the willful misconduct or gross negligence of ATLAS, its employees, officers, agents or subcontractors.

CUSTOMER is responsible for damage, up to the amount of ATLAS' maximum hull deductible per incident, to the Aircraft, and/or its parts, equipment, and attachments installed thereon, if resulting from such causes as, but not limited to, fueling, loading, unloading, or other ground handling by CUSTOMER, its agents or subcontractors. Where such damage is caused by the negligence and/or willful misconduct of CUSTOMER, its agents or subcontractors, CUSTOMER'S Minimum Block Hour Guarantee referred to herein shall not be reduced for cancellations caused by such damage. Normal wear and tear is excepted.

9.4    Except as provided in Article 9.3 above, the Parties shall not claim from each other compensation for loss of use of Aircraft or other consequential or special damages caused by or in connection with loss of or damage to the Aircraft or cargo or the non-performance, delay, or negligent performance of services hereunder.

CUSTOMER shall assure that cargo of a dangerous, hazardous, or offensive nature must be packed in accordance with IATA and ICAO dangerous goods regulations, and 49 CFR 175 for transportation on board the Aircraft, and must be accompanied by a duly executed "shippers declaration for dangerous goods." Carriage of goods which are of a military nature, destined for military use, or subject to governmental transportation restrictions, are subject to prior written approval by ATLAS. In the event United States governmental regulations relating to carriage of hazardous cargo change, CUSTOMER acknowledges the need for ATLAS to comply, and CUSTOMER shall change its packaging and/or handling requirements accordingly.

CUSTOMER shall indemnify and hold ATLAS, its officers, employees, agents and subcontractors free and harmless from and against any and all losses, costs, claims, demands, judgments, expenses, or fines (including FAA civil actions, fines, and penalties and all costs associated with defending or litigating such costs, including reasonable attorneys' fees) (collectively, the *Costs*) which ATLAS may suffer or incur due to failure to comply with this provision.

9.6    CUSTOMER warrants that the cargo to be transported by ATLAS pursuant to this Agreement shall not contain any contraband, materials, products, or other substances the importation, possession, transportation, or distribution of which would constitute a violation of any law of the United States or any other governmental authority having jurisdiction over the Aircraft or operations hereunder. CUSTOMER agrees to indemnify and hold ATLAS harmless from all costs, expenses (including attorneys' fees), losses, liabilities, damages, fines, and judgments (including attorneys' fees) incurred by ATLAS as a result of any breach of the terms and conditions set forth herein.

Bill Pellew – Harvey
President
Ocean Airlines

# ARTICLE 10.
## Insurance

10.1  (a)  During the term of this Agreement, ATLAS shall procure insurance and/or government indemnity covering Aircraft hull "all risks," hull war risks, aircraft third-party legal liability (including war risks coverage). Aircraft third party liability coverage shall be for a combined single limit of not less than One Billion Dollars (USD $1,000,000,000) for any one occurrence.

(b)  CUSTOMER shall, at its own cost and expense, procure cargo and mail insurance in sufficient amount to cover all risk of loss of cargo and mail tendered hereunder, but in no event less than Fifty Million Dollars (USD $50,000,000) for any one occurrence. Subject to the limitations set forth in Article 9.2, CUSTOMER shall also be responsible for processing and settlement of any and all claims relating to lost, delayed, undelivered or damaged cargo or mail.

(c)  CUSTOMER shall be responsible for any additional war risks premium surcharges or other additional charges applicable as a result of operations to, through or over any geographical areas that are not covered under ATLAS' standard policies under Sub-Article 10.1 (a), above.

(d)  The insurance carried by each Party shall be primary and non-contributory.

10.2  Each Party shall arrange for its insurers to waive any rights of recourse including subrogation against the other Party, its employees, officers, agents, or subcontractors in accordance with any liability assumed hereunder.

10.3  Each Party, with respect to its own responsibilities hereunder, shall designate the other Party an additional insured in its policies covering liability risks respectively assumed hereunder, and shall have inserted in those policies an appropriate severability of interest and cross liability clauses.

10.4  Each Party shall arrange that the policy territory of such Insurances shall be worldwide, subject to such territorial exclusions as may be usual and customary in the worldwide airline insurance industry. Insurances arranged must always cover the geographical territories that the Aircraft will be flown in and operated on the ground.

10.5  Each Party shall procure that the interest of the other Party in such Insurances shall be insured regardless of any breach or failure or violation by the Insured of any warranties, declarations or conditions contained in such policies.

10.6  (a)  Prior to commencement of operations hereunder and reasonable in advance of any expiration of each policy of insurance required pursuant to this Agreement, each

Bill Pellew - Harvey
President
Ocean Airlines

Party shall deliver to the other Party certificates evidencing the insurance referred to herein; and

(b)     Each Party shall ensure that such certificate includes a provision giving the other Party not less than thirty (30) days notice (ten (10) days in the event of cancellation due to non-payment) of intent to cancel or materially alter the insurance (in a manner adverse to the other party) carried as required by this Agreement, , and not less than seven (7) days notice (or such shorter period as may be customary) in respect of war and allied perils coverage changes.

## ARTICLE 11.
### *Force Majeure*

11.1    Any occurrence beyond the reasonable control of either Party, including but not limited to strikes, labor stoppage, delay of Aircraft delivery to ATLAS (neither attributable to, nor in any way the fault of ATLAS), seizure, lockout, war, national emergency, terrorism, acts of God, mechanical failure, failure of usual sources of supply, services or modes of transportation or actions of any government (including a call up of the Aircraft by U.S. authorities under the Civil Reserve Air Fleet ("CRAF") or related government program, or for Air Mobility Command or CRAF flights) shall, if affecting performance under this Agreement, be considered a *Force Majeure* hereunder.

11.2    Upon occurrence of a *Force Majeure* event, the affected Party shall give notice to the other Party of such event. Upon giving such notice, during the period of a *Force Majeure* event, all obligations of the Parties hereunder affected by such *Force Majeure* shall be suspended until such event is no longer applicable, except for payment of all outstanding invoices.

## ARTICLE 12.
### Governmental Actions

12.1    CUSTOMER acknowledges that the terms of this Agreement are based in part upon existing governmental regulations, whether by the United States of America or foreign governmental authority(ies) or entity(ies). In the event of governmental changes to such flight regulations, including, but not limited to time and duty rules, security regulations, operational and maintenance regulations applicable to air carriers similarly regulated as ATLAS or to the types of aircraft operated by ATLAS, which have a significant adverse financial impact upon ATLAS, the Parties agree that CUSTOMER and ATLAS shall consult as to methods by which to ameliorate the adverse financial impact of said cost increases. If the Parties are unable to agree upon an allocation of said cost increases, such dispute shall be submitted to mediation. In the event mediation fails, ATLAS may terminate this Agreement upon thirty (30) days written notice from the date the mediator confirms mediation has failed.

Bill Pellew - Harvey
President
Ocean Airlines

## ARTICLE 13.
### Authorizations

13.1   The Parties agree that each of them, in accordance with their respective responsibilities hereunder, shall timely apply for and obtain all necessary governmental approvals, traffic rights, airport clearances, and other permission (if any shall be required) with regard to the Flights.  Nevertheless, ATLAS shall retain ultimate responsibility for verification that any and all such approvals, clearances, and other permission (if any be required) are in place prior to operation of the Flights hereunder.

## ARTICLE 14.
### Termination.

14.1   Either Party may terminate this Agreement at any time, with immediate effect, by notice in writing to the other Party:

(a)   If the other Party is declared bankrupt, or becomes insolvent, or files a petition for bankruptcy, or if the whole or a substantial part of the other Party's property is seized before judgment or under an execution, or if a bankruptcy or insolvency proceeding is commenced against the other Party in any jurisdiction; or

(b)   If the other Party defaults in the performance of any material covenant, term or condition contained in this Agreement and such default continues unremedied during five (5) business days from the time written notice of default has been given, except that default in the payment of money shall be cause for immediate termination by ATLAS.

14.2   In the event this Agreement is so terminated, such termination shall be without prejudice to the rights and liabilities hereunder and at law.

## ARTICLE 15.
### Applicable Law and Jurisdiction

15.1   This Agreement and the interpretation and performance hereof shall be governed by the laws of the State of New York, USA, without regard to the conflict-of-laws rules followed in said State, and both Parties consent to New York as the exclusive jurisdiction and venue for any legal proceedings, and of the federal and state courts located in the State of New York, USA for enforcement action.  In such proceedings the prevailing Party shall be entitled to recover all of its legal costs including reasonable attorney's fees.

**Bill Pellew – Harvey**
President
Ocean Airlines

ARTICLE 16.
Assignment

16.1    This Agreement will inure to the benefit and be binding upon each of the Parties hereto and their respective successors and permitted assigns. Neither this Agreement, nor the rights or obligations of either Party may be assigned, sub-chartered, delegated or transferred, in whole or in part, without the prior written consent of the other Party, except that, subject to FAA approval, ATLAS may assign, transfer or delegate this Agreement to an affiliate.

ARTICLE 17.
Aircraft Maintenance Schedule

17.1    The Parties agree the Aircraft will not be available for service and shall be scheduled for ground time each week at a suitable airport for the accomplishment of routine line maintenance. To that end, Customer shall provide a minimum of one twelve hour period for B747-400F operations and two appropriately separated twelve hour periods for B747-200F operations during each weekly core schedule for performance of such routine line maintenance. In addition, the parties agree the Aircraft will not be available for service and shall be scheduled and positioned for ground time at CUSTOMER'S expense at a location where ATLAS can itself perform or have performed by a third party "A/B" checks at necessary or scheduled intervals. Subject to availability and provided CUSTOMER and Atlas mutually agree to cover "A/B" checks with a substitute aircraft, if the substitute aircraft must be positioned/depositioned to operate CUSTOMER'S schedule, CUSTOMER agrees to pay the agreed Block Hour Rate per block hour plus Article 2.3 expenses relating to the positioning/depositioning of the substitute aircraft.

17.2    The Aircraft must also undergo "C" and "D" checks under ATLAS' Maintenance Program. During such "C" and "D" checks, ATLAS will provide an available substitute aircraft from its fleet in order to support CUSTOMER'S operations. In the event that CUSTOMER operates a B747-400 under this Agreement, ATLAS will make reasonable efforts to supply a substitute B747-400. However, ATLAS shall be under no obligation to provide a B747-400 substitute aircraft and CUSTOMER acknowledges and agrees that a B747-200/300 may be provided.

ARTICLE 18.
Miscellaneous

18.1    If any term or condition of this Agreement is held to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall not be affected thereby and shall be deemed valid and enforceable to the fullest extent permitted by law.

Bill Pellew - Harvey
President
Ocean Airlines

18.2 CUSTOMER shall make a reasonable effort to accommodate the management personnel of ATLAS with complimentary or reduced-fare transportation on CUSTOMER'S passenger flight(s) upon request.

18.3 A waiver of any default hereunder shall not be deemed a waiver of any other or subsequent default hereunder

18.4 Each Party has had an opportunity to review this Agreement, with benefit of legal counsel of its own choosing if desired, and no adverse rule of construction or interpretation shall be applied against ATLAS or CUSTOMER as the drafting Party of this Agreement.

18.5 This Agreement shall supersede all preceding oral and written agreements, contracts, arrangements and stipulations between the Parties concerning the matter hereof and can be revised only upon the prior written consent of both Parties.

18.6 Headings, as used herein, are added for the purpose of reference and convenience only, and shall in no way be referred to in construing the provisions of this Agreement.

18.7 Upon request, CUSTOMER shall provide to ATLAS, prior to startup of operations hereunder, copies of its most recent quarterly and annual audited financial statements, and shall furnish during the Term hereof the same statements within thirty (30) days after the end of each quarter and within ninety (90) days after the close of each fiscal year.

18.8 Except with the prior written consent and approval of ATLAS or as may be required by law, CUSTOMER agrees to keep the terms of this Agreement confidential and not to publicly disclose or advertise (in the form of a press release or otherwise) that this Agreement has been entered into or any information relating to the term or performance hereunder. CUSTOMER also agrees not to use ATLAS' name in any form of publicity without ATLAS' prior written approval.

18.9 CUSTOMER hereby acknowledges that ATLAS has and will have certain obligations and commitments in relation to its aircraft under ATLAS' air transportation contracts with the Government of the United States Department of the Air Force, as the same now exists or may hereafter be extended, renewed or replaced (a "CRAF CONTRACT"). Within eighteen (18) hours after ATLAS gives electronic notice to CUSTOMER that it is obligated to make its aircraft available under its CRAF Contract or because of a U.S. airlift emergency or U.S. national emergency as determined by the President or by the Secretary of Defense of the United States, ATLAS shall discontinue operations hereunder until the cessation of such requirement or emergency. During the CRAF period CUSTOMER'S obligations hereunder shall cease and abate from the time CUSTOMER is deprived of beneficial use of ATLAS aircraft.

18.10 Each signatory to this Agreement warrants and represents that such signatory has full authority and legal capacity to execute this Agreement on behalf of and intending to legally bind the Parties hereto.

I:\Legal\Agrm\Wetchart\New ACMIForm\10/16/06\

16

Bill Pellew - Harvey
President
Ocean Airlines

18.11  This Agreement may be executed in two counterparts, both of which taken together constitute one and the same instrument.

THIS AGREEMENT has been executed in duplicate by the duly authorized representatives of the Parties hereto on the date first hereinabove written.

CUSTOMER:                                    ATLAS AIR, INC.

By: _____                  By: _____

Name: _____                Name: _RONALD A. LANE_____

        Bill Pellew - Harvey

Title: _____               Title: _SR. V.P._____

        President

        Ocean Airlines

**OCEAN AIRLINES SPA**
Via Dell'Aeroporto, 34
25018 MONTICHIARI (Brescia)
Partita I.V.A. n.: 05305501008

H:\Legal\Agreements\Release\Waiver\ACMI\Forms\10/11/06\Word 2000 File\

17

Bill Pellew - Harvey
President
Ocean Airlines

## ANNEX A
to
## AIRCRAFT CHARTER AGREEMENT No. VC-2006-10-06-5Y


THIS ANNEX A to that certain Aircraft Charter Agreement No. VC-2006-10-06-5Y, dated as of this 6th day of October, 2006, by and between ATLAS AIR, INC. and OCEAN AIRLINES S.P.A., (the *Agreement*), and by reference made a part thereof, sets forth more fully the terms and conditions agreed to therein by the Parties, as follows:

### ARTICLE 1.
### Aircraft, Term and Schedules

1.1  The Aircraft referred to in Article 1.1 of the Agreement shall be a B747-200 bearing registration number N516MC, or such other substitute aircraft from ATLAS' fleet of B747-200  Aircraft, including but not limited to N505MC, N506MC, N512MC, N517MC, N522MC, N523MC, N524MC, N526MC, N527MC, N528MC, N536MC, N537MC, N540MC or N809MC.  This list of Aircraft may be modified, if necessary, depending on changes to ATLAS' fleet and subject to notice to the FAA.

1.2  The cargo capacities of the Aircraft are as follows:

747-200F:  The minimum cargo capacity per Flight shall be twenty-nine (29) cargo pallets 125" x 96/88" x 118/96" (inches) on the main deck, nine (9) cargo pallets 125" x 96/88" x 64" (inches) on the lower deck, and five hundred twenty (520) cubic feet volume for loose cargo in the lower deck bulk compartment.

1.3  The Term of the Agreement shall be for a period of two (2) months and shall commence on or about October 16, 2006 and shall end on December 15, 2006.

Bill Pellew - Harvey
President
Ocean Airlines

1.4    The Flight(s) and Schedule(s) referred to in Article 1.3 of the Agreement shall be as follows:

| DAY | ORIGIN | LOCAL DEP | ZULU DEP | | DEST | LOCAL ARR | ZULU ARR |
|---|---|---|---|---|---|---|---|
| MON | | | | | | | |
| TUES | | | | | | | |
| WED | | | | | | | |
| THURS | | | | | | | |
| FRI | | | | | | | |
| SAT | | | | | | | |
| SUN | | | | | | | |

1.5    The area of Operations hereunder shall be global as authorized by the FAA and specified in ATLAS' Operations Specification at Paragraph B050 (a).

ARTICLE 2.
Block Hour Rate and Additional Services

2.1    The Block Hour Rate referred to in Article 2.1 of the Agreement shall be USD $5,150 per Block Hour flown.

2.2    CUSTOMER agrees to compensate ATLAS at the above Block Hour Rate for a monthly minimum Block Hour guarantee of 325 Block Hours per calendar month (the *Monthly Minimum Block Hour Guarantee*) (prorated on a thirty [30] day basis if less than a full month); *provided* ATLAS properly tenders the Aircraft (or substitute aircraft) and crew for agreed operations hereunder.   It is understood and agreed that any extra flights (charter or otherwise) requiring an additional aircraft under this Agreement shall not be attributable toward the Monthly Minimum Block Hour Guarantee unless specifically agreed in writing by ATLAS.

Bill Pellew - Harvey
President
Ocean Airlines

2.3     The aircraft shall be operated for CUSTOMER pursuant to a minimum Block Hour to Cycle ratio of 5 Block Hours for every cycle ("5:1") meaning the monthly average cycle time per aircraft must be a minimum of 5 Block Hours.  Should the aircraft Block Hour to Cycle ratio fall below 5:1, an excess cycle charge of USD $2905 for the B747-400F and USD $4025 for the B747-200F shall apply to each excess cycle utilized.

2.4     CUSTOMER shall be responsible for crew hotel accommodations and hotel transfers as follows:

(a)  CUSTOMER agrees to provide hotel accommodations and transfers (including reservations and payment) consistent with ATLAS crew hotel standards and policies up to four rooms per day in HKG, PVG and EUROPE

2.5     ATLAS shall be responsible for crew positioning/depositioning.

2.6     In the event that ATLAS' call sign is used for any Flight operated pursuant to this Agreement, CUSTOMER shall pay ATLAS the fees and charges set forth in the attached Addendum 1 to Annex A on a per sector flown basis.  In addition, CUSTOMER shall pay ATLAS for any services in Addendum 1 that the parties agree are to be provided by ATLAS or which ATLAS provides to CUSTOMER on an ad hoc basis.  Within 15 days after the end of each calendar month during the term of this Agreement, or any renewal, ATLAS shall issue an invoice for the services provided and contemplated in this paragraph, and CUSTOMER shall pay on such invoices within 14 days of receipt.

2.7     Additional services not included in the Block Hour Rate shall be priced as follows:

| SERVICE | PRICE |
|---------|-------|
|         |       |
|         |       |
|         |       |
|         |       |
|         |       |

ARTICLE 3.
Payment, Invoices and Notices

3.1     On October 16, 2006, CUSTOMER shall pay to ATLAS Eight Hundred Thirty Six Thousand Eight Hundred Seventy Five United States Dollars (US$ 836,875) representing the Monthly Minimum Block Hour Guarantee for the Aircraft through October 31, 2006.  Thereafter, on each the first and fifteenth of each successive calendar month during the term hereof, commencing on the 1st day of November, 2006, CUSTOMER shall pay ATLAS,

Bill Pellew - Harvey
President
Ocean Airlines

without demand, for one half of the Monthly Minimum Block Hour Guarantee for the next succeeding one-half calendar month.

Within fifteen (15) days after the end of each calendar month during the term of this Agreement, or any renewal, ATLAS shall issue a reconciliation invoice for any Block Hours flown by CUSTOMER in the prior month in excess of the Monthly Minimum Block Hour Guarantee. The number of Block Hours operated during the term of this Agreement shall be based on the Flight(s) in the ACARS record of aircraft movements, if ACARS is installed, or recorded in the Captain's Flight Log, (which if ACARS is not installed shall be made available to the CUSTOMER) which shall be regarded as final. Payment on invoices for the Monthly Minimum Block Hour Guarantee and the reconciliation invoices shall be due within 5 days of ATLAS' issuance of such invoice.

Invoices for fees and services not included in the Block Hour Rate shall be issued on or about the 15th day of each subsequent month and shall be payable within 14 days.

A late payment surcharge equal to one percent (1%) of the unpaid balance due shall become due and payable on any late-paid invoice, with an additional 1% of the unpaid balance accruing on the first day of each and every subsequent month thereafter during which the balance due remains unpaid.

3.2     Any and all amounts due hereunder to ATLAS shall be paid in United States Dollars (*USD*), free of all deductions and setoffs, to:

> JP Morgan Chase Bank
> One Chase Manhattan Bank
> New York, New York 10004
> ABA #021000021
> Atlas Air, Inc. Account #590 36 2135

3.3     In the event that CUSTOMER falls more than fifteen (15) days behind in payments owed to ATLAS hereunder, ATLAS shall have the right, in addition to any other rights provided in this Agreement or by law, to require CUSTOMER to make all payments required hereunder in advance or provide such additional payment security acceptable to ATLAS until such time as the account is brought forward and current.

3.5     (a)     Invoices shall be forwarded to the CUSTOMER contact at the following address and fax:

> Ocean Airlines S.p.A.
> Brescia Airport
> Brescia Italy
> Attn:    Accounts Payable Dept.

Bill Pellew – Harvey
President
Ocean Airlines

(b)    Operational notices and messages relating to Flight(s) performed or to be performed under the Agreement shall be sent to CUSTOMER, as follows:

Ocean Airlines S.p.A.
Brescia Airport
Brescia Italy
Attn:   Franco Vidon
        Planning and Ground Operations

(c)    All other notices to CUSTOMER under this Agreement shall be sent to CUSTOMER as follows:
Ocean Airlines S.p.A.
Brescia Airport
Brescia Italy
Attn:   Franco Vidon
        Planning and Ground Operations

3.6    Invoices for the account of ATLAS shall be forwarded to ATLAS at the following address and fax:

Atlas Air, Inc.
Attn:   Accounts Payable Department
2000 Westchester Avenue
Purchase, NY  10577, USA
Telephone:   914-701-8774
Facsimile:   914-701-

(b)    Operational notices and messages relating to Flight(s) performed or to be performed under the Agreement shall be sent to ATLAS, as follows:

ATLAS Ground Operations,  SITA: MIAGO5Y; HDQGO5Y;
ATLAS Ground Operations,  EMAIL: specialloads@atlasair.com
ATLAS Dispatch, SITA: HDQOW5Y; and
ATLAS System Control, SITA:  HDQOC5Y and HDQL5Y

Bill Pellew - Harvey
President
Ocean Airlines

(c)     All other notices to ATLAS under this Agreement shall be sent to ATLAS as
follows:

ATLAS AIR, INC.
President
2000 Westchester Avenue
Purchase, New York 10577
Phone: 914-701-8688
Fax: 914-701-8081

with a copy to:

ATLAS AIR, INC.
General Counsel
2000 Westchester Avenue
Purchase, New York 10577
Phone: 914-701-8327
Fax: 914-701-8333

3.7     Any notice required hereunder shall be deemed duly given to the other party if it is sent
by certified mail or fax, provided that notices by fax will only be deemed completed after
confirmation of receipt by the addressee.


ATLAS AIR, INC.

By: _____
Name: RONALD A. LANE
Title: SR. V.P

CUSTOMER:

By: _____
Name: _____ Bill Pellew – Harvey
Title: _____ President
Ocean Airlines

**OCEAN AIRLINES SPA**
Via Dell'Aeroporto, 34
25018 MONTICHIARI (Brescia)
Partita I.V.A. n.: 06305501008

I:\Legal\Agents\Various\New ACM\Formal\5/13/09\3:00 PM\

23



XXX    YYY
YYY    ZZZ

1) Aircraft handling charges include, lav fee, push in and out, GPU, Airstart, Linen service,water and cockpit cleaning
2) Customer pays all Aircraft Handling and Load/Unload costs in
3) Any De-icing will be charged back at actual, plus 5% service charge
4) Crew Positioning and Depositioning covered in the Agreement
5) Engine oil covered in the Agreement

24

H/Legal/Agmt/Wetlease/NewACMI/Form419/1406/t

Bill Pellew - Harvey
President
Ocean Airlines

**SERVICES AGREEMENT**

This Agreement is concluded on the 19th September 2006 between Polar Air Cargo Airways (hereinafter referred to as Polar), having the principle place of business temporary at Regus Offices, Lufthansa Center Beijing and Company Beijing Foreign Airlines Service Corporation (hereinafter referred to as FASCO ), having its principle place of business at : 12-13 Diplomatic Apartments Jianguomenwai,Beijing ,P.R.C .
The PARTIES AGREE AS FOLLOWS:

1.1.    FASCO is authorized by Polar Airways to complete applications and undertakes procedures which required by Chinese government as the following:

1.1.1.    ~~Applying Operation Permit to CAAC;~~

1.1.2.    ~~Applying Approval Certificate to CAAC;~~

1.1.3.    Registering at Administration of Industry and commerce(Business license);

1.1.4.    Carrying out the application for working permit for head representative;

1.1.5.    Carrying out the application for residence certificate for head representative;

1.1.6.    Carrying out the application for visa for head representative;

1.1.7.    Registering the tax registration with Beijing Municipal ;

1.1.8.    Registering the tax registration with State Tax Bureau;

1.1.9.    Registering the statistics registration with Beijing Municipal Statistics Bureau;

1.1.10.    Registering the Customs;

1.1.11.    Registering foreign exchange registration with State Administration of Foreign Exchange Beijing Branch;

1.1.12.    Establishment of the bank account;

1.1.13.    Assisting in collection of all the relevant certificates and licenses upon completion of the procedures listed in the relevant documents;

1.1.14.    Any other services under the additional agreement to this agreement.

1.2.    FASCO undertakes to perform the abovementioned activities within the normal process period , subject to prompt receipt for all the government required documents and signatures from Polar Airways; if Polar Airways does not promptly provide to FASCO sufficient and correct documents or signatures according to the government requirement ,FASCO shall not take any responsibility for overdue process.

1.3.    Polar Airways commits itself to accept and pay for the services rendered according to the terms and conditions of this Agreement or the relevant additional agreements to this agreement.

1.4.    The fees for the services to be rendered by FASCO as mentioned in this Agreement shall be CNY 13,040.00.

1.5.    Payment of the service fees shall be in installments as follows:
CNY 6,520.00 prepayment to be effected within 5 banking days upon agreement signed and the invoice presented by FASCO to Polar Airways.
CNY 6,520.00 arrear payment to be effected upon service completion and under the invoice presented by FASCO to Polar Airways.
The invoice shall include the amount of payment in CNY and equivalent in US Dollars at the rate of the Central Bank of PRC on the date of invoice.

1.6.    The fees mentioned above shall exclude the actual disbursements incurred by FASCO in connection with the services provided under this Agreement, in particular charges and taxes collectable by relevant governmental authorities.

1.7.    Polar Airways shall reimburse any reasonable FASCO expenses named in Article 1.6 of this Agreement, upon being presented by FASCO with documented justification of the costs involved.

1.8.    None of the contracting Parties shall be held responsible for delayed or non-performance of obligations set forth in this Agreement hereto, if caused by Force Majored, including but not

limited to acts of God or the public enemy, war, civil war, war-like operations, insurrections or riots, fires, floods, explosions, earthquakes or serious accidents, epidemics or quarantine, strikes (official or unofficial); any act of Government or any other circumstances beyond either parties reasonable control.

1.9.    This Agreement shall come into force and effect on the date of signing and continue until the work completion.

1.10.    This Agreement is executed in two original copies both having the equal legal effect. One copy will stay with <u>Polar</u> Airways the other will be retained by FASCO.


**Polar Air Cargo**                                    **FASCO Beijing**

Signature _____          Signature _____

Stamp: _____             Stamp: _____

Date:    29SEP2006                                   Date:    12 October, 2006

## AMENDMENT No. 1

## TO AIRCRAFT CHARTER AGREEMENT NO. VC-2006-10-06-5Y

## BETWEEN

## ATLAS AIR AND OCEAN AIRLINES

This Amendment No. 1 to Aircraft Charter Agreement No. VC-2006-10-06-5Y ("Amendment") is made and entered into as of the 4th day of December, 2006, by and between Atlas Air, Inc. ("ATLAS"), a Delaware corporation located at 2000 Westchester Avenue, Purchase, New York, 10577, U.S.A., and Ocean Airlines, S.p.A. ("CUSTOMER"), a company organized under the laws of Italy, whose head office is located at Brescia Airport, Brescia Italy, each a "Party" or both collectively as the "Parties."

**WHEREAS,** ATLAS and CUSTOMER have entered into that certain Aircraft Charter Agreement No. VC-2006-10-06-5Y dated the 6th day of October 2006 (the "Charter Agreement"), providing for the charter of an aircraft from ATLAS to CUSTOMER; and,

**WHEREAS,** the Parties desire to amend the terms and conditions of the Wet Lease as more fully set forth herein.

**NOW THEREFORE,** in consideration of the mutual promises and covenants contained herein and intending to be legally bound hereby, the Parties hereto agree as follows:

1)   Effective upon execution hereof the Term as set forth in Annex A, Paragraph 1.3 of the Charter Agreement shall be extended from December 16, 2006 through December 18, 2006 ("Extended Term").

2)   CUSTOMER agrees to compensate ATLAS for a Minimum Block Hour Guarantee of 32.5 Block Hours for the Extended Term.

3)   Payment of One Hundred Sixty Seven Thousand three Hundred Seventy Five Dollars (USD $167,375) representing payment of the Minimum Block Hour Guarantee for the Extended Term shall be made to ATLAS on December 15, 2006.

4)   Block Hours flown in excess of them Minimum Block hour Guarantee for the Extended Term shall be invoiced as part of ATLAS' reconciliation invoice pursuant to Paragraph 3.1 of Annex A of the Charter Agreement.

5)   All capitalized terms used herein and not otherwise defined shall have the same meaning as ascribed in the Charter Agreement.

1

6)     Except as provided herein all other terms and conditions of the Charter
Agreement shall remain in full force and effect.

By signature below the Parties indicate that they have read the foregoing terms of this
Amendment and agree to be bound by them.

ATLAS AIR, INC.                          OCEAN AIRLINES S.p.A.

By:                                      By:    Rossano Diego DeLuca
Its:                                     Its:   CEO

2

Ex. 2

## REPAYMENT AGREEMENT

This Repayment Agreement ("Agreement") is entered into as of October 22, 2007 (the "Effective Date") by and between Atlas Air, Inc. ("Atlas") and Ocean Airlines S.p.A., a company organized under the laws of Italy (together with its affiliates and subsidiaries, "Ocean"). The parties are sometimes referred to individually as "Party" and collectively as "Parties."

## PRELIMINARY STATEMENT

I.      On or about October 6, 2006, Atlas and Ocean entered into Aircraft Charter Agreement No. VC-2006-10-06-5Y, which was amended by Amendment No. 1 dated as of December 4, 2006 (collectively, the "Amended Aircraft Agreement").

II.     Ocean as per the terms of the Amended Aircraft Agreement failed to make payments when due. On April 5, 2007, Atlas sent Ocean a demand for payment. Ocean has failed to effect payment.

III.    Ocean confirms that it owes Atlas the aggregate amount of $ 688,773.41 together with any other interest amounts owed under the Amended Aircraft Agreement (collectively, "Debt"), without defense, setoff, claim or counterclaim:

IV.     Ocean desires to repay the Debt, and Atlas is willing to accept the amounts owing to it, in accordance with the terms and conditions below.

Now, therefore, in consideration of the mutual promises contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      **Incorporation of Preliminary Statement / Reaffirmation of Amended Aircraft Agreement/Conflict Resolution**. All recitals in the Preliminary Statement are true and correct and incorporated in this Agreement. Ocean reaffirms all of its obligations, representations and covenants under the Amended Aircraft Agreement and acknowledges that the Amended Aircraft Agreement remains in full force and effect except as specifically modified by this Agreement. To the extent of any conflict between the provisions of this Agreement and the Amended Aircraft Agreement, this Agreement shall apply..

2.      **Interest on Debt**. From the date of this Agreement until the Debt is paid in full, the Debt shall bear interest at 10% *per annum* until paid. If Ocean fails to pay when due any amount it is obligated to pay under this Agreement (a "Default"), the Debt shall bear interest at 15% per annum. Default Interest shall apply from the Effective Date of this Agreement if a Default occurs.

3.      **Repayment Schedule**. Ocean shall repay the Debt to Atlas, together with interest accruing under this Agreement pursuant to the following schedule:

| Date of Payment | Amount |
|---|---|
| Week of October 22, 2007 | $250,000.00 |
| Week of October 29, 2007 | $48,752.60 |
| Week of November 5, 2007 | $48,752.60 |
| Week of November 12, 2007 | $48,752.60 |
| Week of November 19, 2007 | $48,752.60 |
| Week of November 26, 2007 | $48,752.60 |
| Week of December 3, 2007 | $48,752.60 |
| Week of December 10, 2007 | $48,752.60 |
| Week of December 17, 2007 | $48,752.60 |
| Week of December 24, 2007 | $48,752.60 |

Payment shall be made in immediately available funds by wire transfer to Atlas' account per the following wire instructions:

JP Morgan Chase Bank
One Chase Manhattan Bank
New York, NY
ABA #02100021
Atlas Air, Inc. Account Number 590362135

4.    **Temporary Forbearance/Default**. Atlas shall forbear from instituting an action against Ocean until December 24, 2007 ("Maturity Date");   provided, however, that the Forbearance Period shall automatically and immediately terminate, and Atlas shall be entitled to exercise all of its rights and remedies, without notice, including instituting an action, on the earlier to occur of any of the following events ("Default"): a)Ocean fails to comply with any provision of this Agreement;  b) Ocean files a voluntary petition for relief under any bankruptcy law; c) An involuntary proceeding is filed against Ocean seeking the liquidation, reorganization, dissolution, winding up, or composition or readjustment of debt, or the appointment of a trustee, receiver, liquidator or the like; d) Ocean voluntarily terminates all or a substantial part of its operations or applies for or consents to the appointment of, or the taking of possession by, a receiver, custodian, trustee, or liquidator, of all or a substantial part of Ocean's assets; e) A final judgment is entered against Ocean for money damages in excess of $500,000.00; f) garnishment, attachment or other execution process is served or made against Ocean or any of its assets for an amount exceeding $1,000,000.00; g) Atlas in good faith deems itself insecure in connection with the prospect of timely payment of amounts owing to it under this Agreement; or h) The amounts due under this Agreement are not paid in full by the Maturity Date.

For purposes of this Agreement, "good faith" shall mean "honesty in fact" and shall be measured subjectively.

5.    **Time of the Essence**.  Time is of the essence in connection with Ocean's performance under this Agreement.  If the last day on which an action to be completed or a time period ends is a Saturday, Sunday, or a legal holiday, the period runs until the end of the next day

2

which is not one of the aforementioned days. Unless otherwise indicated, "days" refers to calendar days.

6. **Acknowledgments**. Except for the temporary forbearance granted herein, neither this Agreement, nor any course of conduct, course of dealing, statements or actions by Atlas, whether occurring before or after this Agreement, has changed or shall change the obligations contained in the Amended Aircraft Agreement nor constitute a waiver of, or in any way limit, delay, suspend, or otherwise affect in any manner Atlas' right to exercise any and all rights and remedies available to it under the Amended Aircraft Agreement, this Agreement and applicable law.

7. **Release of Atlas**. Ocean acknowledges that at all times prior to and during the course of the Amended Aircraft Agreement and through the date of this Agreement, Atlas has acted in good faith and in a commercially reasonable manner, and Atlas has not made overreaching, unreasonable or improper demands. Ocean, on behalf of itself and its respective successors and assigns, and any and all other entities or persons claiming rights by or through Ocean, hereby acquits, releases and forever discharges Atlas and its affiliated corporations, directors, officers, agents, employees, principals, attorneys, shareholders, and their successors and assigns, from any and all manner of actions and causes of action, suits, rights, damages, claims, losses, and all costs, and attorney's and other fees whatsoever which Ocean ever had, or may now have, by any reason of any matter, cause or thing whatsoever from the beginning of time to the Effective Date of this Agreement, whether known or unknown, foreseen or unforeseen.

8. **Notices**. All notices required or permitted under this Agreement or the Amended Aircraft Agreement shall be in writing and addressed as follows (unless the Party entitled to notice changes its address for notices in writing to the other Party):

| If to Atlas: | If to Ocean: |
|---|---|
| Christian J. Dunlay, Esq. | Rossano De luca |
| Senior Counsel | CEO |
| Atlas Air, Inc., Legal Department | Ocean Airlines |
| 2000 Westchester Avenue | Aeroporto di Brescia |
| Purchase, NY 10577-2543 | 25018 Montichuri (BS) Italy |
| Phone:  (914) 701-8014 | Phone: (+39) 030 9657370 |
| Fax:  (914) 701-8333 | Fax:    (+39) 030 9657066 |

Notices may be sent by registered mail, overnight courier with proof of delivery, hand-delivery with proof of delivery or via facsimile transmission with proof of transmission. A properly addressed notice will be deemed delivered on the business day of receipt, provided, however, that a notice sent by facsimile transmission and received after 5:00 p.m. (local time of the recipient) shall be deemed delivered on the next business day.

9.    **Governing Law / Jurisdiction**.   This Agreement shall be governed by and interpreted in accordance with the laws of New York, without regard to its principles involving choice or conflicts of law.  All actions to enforce or which otherwise concerns this Agreement and the Amended Aircraft Agreement shall be litigated exclusively in the courts located in New York, New York or in Italy, at Atlas' sole discretion.  Notwithstanding the foregoing, Atlas does not consent to the jurisdiction of the courts in Italy for any action not instituted by Atlas in those courts.   Service of process on the Parties for any action may be made by delivery of the summons and complaint via DHL, Federal Express, or other recognized international delivery service at the address of the Parties specified in Section 9 above.  Notwithstanding the foregoing, a Party may also serve process in accordance with applicable law.

10.    **Usury Savings Provision**.  The obligations of Ocean under this Agreement shall be subject to the limitation that payment of interest to Atlas shall not be required beyond such amount that would be contrary to provisions of law applicable to Atlas and Ocean that may limit the maximum rate of interest which may be charged or collected by Atlas.  Interest in excess of the maximum allowed by applicable law will not be collected and if collected will be credited as a reduction to principal, or if such excess exceeds the amount of the principal or any other amounts owed to Atlas, then Atlas will pay the difference to Ocean

11.    **JURY WAIVER.   IN ANY ACTION TO ENFORCE OR WHICH OTHERWISE CONCERNS THIS AGREEMENT, OR ANY OF THE OTHER TRANSACTION DOCUMENTS REFERRED TO IN OR REQUIRED BY THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, THE PARTIES WAIVE TRIAL BY JURY.**

12.    **Counterparts/Electronic or Facsimile Signature**.  This Agreement: a) may be executed simultaneously in counterparts, each of which shall be deemed an original, but both of which together shall constitute one and the same instrument; and, b) may be signed via electronic or facsimile signature, either of which shall be treated as an original for all purposes.

13.    **Miscellaneous.** This Agreement shall inure to the benefit of and be binding on each of the Parties and their respective successors, assigns and legal representatives. If any provision of this Agreement is held to be invalid or unenforceable, the remaining terms and conditions of this Agreement shall not be affected thereby and shall be deemed valid and enforceable to the fullest extent permitted by law.  In any action between the Parties to enforce or which otherwise concerns this Agreement, the prevailing Party shall be entitled to recover attorney's fees, costs and expenses, including expert fees, from the losing party, including attorney's fees incurred during trial, appellate, bankruptcy, arbitration, or regulatory proceedings. A waiver of any Default under this Agreement shall be in writing and signed by Atlas.  A waiver by Atlas of a Default shall not be deemed a waiver of any other or subsequent Default.  This Agreement represents the entire agreement of the Parties with respect to the subject matter of this Agreement.  No Party has relied on any oral representations, promises or statements made by the other Party prior to the signing of this Agreement.  This Agreement may be revised or modified only in writing signed by both Parties.  The Parties shall cooperate with each other and execute

4

and deliver such other and additional documents as may be necessary to carry out the intent of this Agreement.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the date first written above.

ATLAS AIR, INC.

By: _____

Name: _____

Title: _____


OCEAN AIRLINES S.P.A.


By: _____

Name: _____

Title: _____

5